COBB, Judge,
concurring in part, dissenting in part.
I concur with part A of the memorandum issued today by the majority because I agree that the probable cause finding was not clearly erroneous. I dissent, however, from part B of the memorandum regarding the decision to transfer M.W.B. to the circuit court for trial as an adult.
The majority’s conclusion is supported by Alabama caselaw. Yet it is a perfect example of how all too often the orderly development of legal principles has been hindered by our burgeoning caseload.[1] Not only does this case illustrate this point by its questionable facts, but also by the trial court’s failure to apply the clear and convincing standard established by this court in O.M. v. State, 595 So.2d 514 (Ala.Cr.App.1991). Therefore, this dissent is generated out of my belief that this case was inappropriate for transfer to circuit court.
I
The transfer of cases involving juveniles to the circuit court where ,the juveniles are tried as adults is certainly on. the rise. However, transferring children for trial as adults has not achieved the desired result of making children more accountable for their behavior and, therefore, decreasing criminal activity among children. Federal Bureau of Investigation, United States Department of Justice, Uniform Crime Reports for the United States 1994, 5-7, 10-12, 35-37 (1995). Because of perceptions (some would say mis-perceptions) that juvenile judges were not transferring enough cases involving juvenile offenders to the circuit court, the legislature passed Act No. 94-481, 1994 Ala.Acts, codified at § 12-15-34.1, Ala. Code 1975. That act modified the jurisdiction of the juvenile court by declaring that children 16 years of age or older who commit certain enumerated violent offenses are to be treated as adults and that, therefore, these children are no longer within the jurisdiction of the juvenile court. The long-term results of this legislative change are yet to be seen.
The juvenile court was designed so that a child who commits a criminal offense would be treated in such a way that the child would learn from his mistake and not reoffend. The special terms used in juvenile proceedings illustrate the differences in the way the criminal justice system views a juvenile offender as compared to an adult offender.[2] *1000 These terms reflect more than just semantic differences.
The juvenile court is charged with deciding what is in the best interest of the child. Nevertheless, there should be balancing of the public’s interest against the child’s interest. In the bifurcated transfer proceeding, once probable cause has been established, the court then conducts a dispositional hearing in order to determine whether the juvenile is amenable to treatment. If the juvenile is beyond benefiting from the services the juvenile court has to offer, then the public interest would demand that the juvenile be treated as an adult.
Generally, three types of cases are transferred to adult court. The most frequently transferred case involves a violent offense committed by a child who has a lengthy juvenile record. Second, a juvenile judge will generally transfer a case regardless of the seriousness of the offense when it involves a child who has had ongoing contact with the juvenile court and has been committed to the Department of Youth Services' on more than one occasion; this is a child who has been under the constant supervision of the juvenile court, has been offered its services, however limited they may be, and whose behavior has failed to improve. Third, a juvenile judge will usually transfer a case that involves an older child with a relatively clean record when the offense is heinous or violent in nature.
This case does not fall within any of these categories. The results of M.W.B.’s actions were horrendous — three innocent people lost their lives — but the underlying act was not itself horrendous. The state trooper who investigated the accident testified that the evidence indicated that M.W.B.’s vehicle slid onto the shoulder of the road, and after it returned to the pavement, it crossed the center line. The skid marks before the point of impact and other factors led the trooper to estimate that M.W.B. was traveling 10 m.p.h. over the posted speed limit. There was no evidence that alcohol was involved in the accident. At most, M.W.B. was negligent.[3]
Neither was this a case of a repeat offender, for M.W.B. had never been referred to the juvenile court. The worst thing the trial judge could say about this high school student was that he had been given a warning ticket for speeding and he had once been in the presence of other teenagers who were drinking. The same could be said about almost every teenager in Alabama. It certainly cannot be said that M.W.B. had not taken advantage of the rehabilitative efforts of the juvenile court — he had no prior record. But for the unfortunate loss of innocent lives, M.W.B. possibly would have faced a charge of speeding, which is not a major criminal offense but a misdemeanor.[4]
II
Justice Kennedy, in an opinion dissenting from the quashing of a writ of certiorari by the Alabama Supreme Court in Ex parte J.R., 582 So.2d 444 (Ala.1991), discussed the standard of proof and the standard of review in juvenile transfer proceedings. He noted that the burden of proof for the probable cause phase of the transfer hearing was whether a reasonably prudent man would believe that the offense had been committed and that the juvenile offender had committed it. He noted, too, that no burden of proof for the dispositional phase of the proceeding had been pronounced by the appellate courts. Id. at 445-46. He noted further that the following appellate standard of review for both phases of transfer hearings had gradually “evolved”: probable cause and transfer decisions will not be reversed on appeal unless they are clearly erroneous. Justice Kennedy agreed that a probable cause determi *1001 nation should not be set aside unless it was clearly erroneous. Id. at 448. He asserted, however, that the Alabama Supreme Court should establish a burden of proof and a standard of review for the dispositional phase, and that each should be by “clear and convincing evidence,” that is, the “juvenile court may grant a motion to transfer a juvenile if it finds from cléar and convincing evidence that it is in the best interest of the child or the public to do so,” Id. at 446-47, and “an appellate court must find, within the record, clear and convincing evidence in order to affirm a juvenile court’s determination at the disposition hearing that it is in the best interest of the child or the public to transfer the child for prosecution.” Id. at 449.
In O.M. v. State, 595 So.2d 514 (Ala.Cr. App.1991), this court adopted Justice Kennedy’s dissenting opinion oii the standard of proof issue in Ex parte J.R. In many of the cases in which this court has purported to apply this standard, however, it appears to me that it has done no more than review the record to determine whether the trial court considered the six factors set out in § 12-15-34(d). E.y., D.R.H. v. State, 615. So.2d 1327, 1329 (Ala.Cr.App.1993) (upholding the transfer and stating, “The court viewed the evidence and considered all of the factors listed in § 12-15-34(d) in reaching its decision”). This result is incomprehensible to me. The fact that the trial court has included statutory verbiage or mentioned in its order that it considered these six factors does not, in any way, reheve this court from its obligation- to conduct an independent review of the record to determine whether clear and convincing evidence exists to support the transfer of the child for prosecution as an adult.
In other eases, this court has not conducted the review required by its own caselaw. For example, in AM. v. State, 621 So.2d 369 (Ala.Cr.App.1992), this court affirmed the transfer of a juvenile charged with receiving stolen property, even though ■ there is no mention of any of the other factors relevant to the transfer decision, such as any prior delinquency record, the nature of any past efforts, or the interests of the community. In other eases, this court has failed to apply the correct standard of review. E.g., B.L.S. v. State, 628 So.2d 1034, 1036 (Ala.Cr.App. 1993) (quoting the clear and convincing standard of review and applying the abuse of discretion standard of review); R.J. v. State, 627 So.2d 1163, 1169 (Ala.Cr.App.1993) (applying both the “abuse of discretion” standard and the “clear and convincing” standard); D.R.H. v. State, 615 So.2d 1327, 1329 (Ala.Cr.App.1993) (applying the abuse of discretion standard of review).[5]
This case provides yet another example, in my opinion, of this failure to conduct a thorough analysis of the evidence and apply the appropriate standard, because there is no clear and convincing evidence in this case to support the transfer of M.W.B. to circuit court for trial as an adult. Certainly the loss of three lives made this a very serious accident. However, a review of the facts demonstrates that the harm was unintended. M.W.B. has no prior record. There were no “past treatment efforts” with regard to M.W.B., so there can be no evaluation of the nature of his response to any treatment efforts. The juvenile court and the majority of this court apparently considered a written warning from a trooper as if it were some type of past treatment effort to which M.W.B. failed to respond; I do not agree with that comparison. The fact that M.W.B. was traveling 10 m.p.h. over the speed limit approximately one week after he received a written warning for speeding does not in any way alter the fact that M.W.B. received no prior treatment or services through the juvenile court, which clearly is what is meant by the statute. The juvenile court described the child’s demeanor as “not good,” but the probation officer stated that M.W.B. “carried himself well” and that he is generally well liked by his peers at school. The juvenile court found.M.W.B. to be physically and mentally mature, but the probation officer stated that he was less mature physically than others his age. The probation officer stated that, because he lacked a juvenile *1002 record and because the deaths were unintended, the child’s and community’s best interests warranted keeping the matter in juvenile court.
It is certainly true, as the majority states, that the existence of contrary evidence does not preclude a juvenile’s transfer to circuit court. However, there must still be evidence that clearly convinces this court that it is in the best interests of M.W.B. or the public that M.W.B. be transferred. That standard cannot be met here. The lack of a juvenile record, the lack of prior treatment efforts, and the nature of the crime can only, in my opinion, militate against a transfer. The contradicting evidence on the remaining factors further demonstrates that the evidence as a whole does not satisfy the clear and convincing standard.
I-cannot imagine a case more appropriate for adjudication in the juvenile court. In light of the above, I would reverse the lower court’s order transferring the cause for prosecution in circuit court. Therefore, I respectfully dissent.

. The Alabama Court of Criminal Appeals has the second highest mandatory caseload per judge among all intermediate appellate courts in the United States. National Center for State Courts, State Court Caseload Statistics (1995).

. For example, when we discuss juveniles we speak of "detain” not “incarcerate”; "detention *1000 center” not “jail"; "petition” not “arrest warrant"; "admitting the allegations of the petition” not "pleading guilty”; and "disposition” not "sentence”.- See §§ 12-15-1, 12-15-71(c), Alabama Code 1975.

. I share with Justice Cook the concern he expressed in his special concurrence in Ex parte Knowles, 689 So.2d 832 (Ala. 1997), that § 32-5A-192, Ala. Code 1975, violates due process because it imposes criminal felony sanctions in the complete absence of a culpable mental state.

. Section 32-5A-8, Ala. Code 1975, provides that violations of the traffic code are misdemeanors, unless otherwise specified, and the first conviction may be punished by a fine of up to $100.00 or by not more than 10 days in jail.

. In T.R.D. v. State, 673 So.2d 838, 843 (Ala.Cr. App.1995), I, too, referred to the abuse of discretion standard.